# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

TRENTON EDWARD POPE,              Case No. 1:11-cv-866
        Petitioner,

                                      Dlott, J.

        vs                            Bowman, M.J.

WARDEN, PICKAWAY          **REPORT AND**
CORRECTIONAL INSTITUTION,     **RECOMMENDATION**
        Respondent.

Petitioner, who is currently incarcerated at the Pickaway Correctional Institution in Orient, Ohio, has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The case was transferred to this Court from the Eastern Division of this federal judicial district on December 12, 2011. This matter is now before the Court on the petition and respondent's return of writ with exhibits. (Docs. 2, 9).[1]

## I. PROCEDURAL HISTORY

### 1998-1999: State Trial Proceedings and Direct Appeal

On August 13, 1998, the Hamilton County, Ohio, grand jury returned a fifteen-count indictment against petitioner and five co-defendants, including petitioner's brother, Timothy Pope, based on their involvement in an armed robbery of a Fifth Third Bank on August 4, 1998. (Doc. 9, Ex. 1). The defendants were all charged with two counts of kidnapping in violation of

---

[1] It is noted that petitioner filed a "traverse" brief in reply to respondent's return of writ on November 23, 2012. (*See* Doc. 12). Although petitioner was granted a 20-day extension in which to file his "traverse" brief (*see* Doc. 11), the brief was not filed until after the deadline had passed and the undersigned had drafted the Report and Recommendation in this matter. Because the brief was not filed within the allotted time frame, it will not be specifically addressed in this Report and Recommendation. The Court has reviewed petitioner's additional pleading, but is not persuaded by any of petitioner's arguments to change its recommendations regarding his claims for relief. To the extent that petitioner disagrees with any of the undersigned's recommendations, petitioner will have the opportunity to present his arguments (including those asserted for the first time in his "traverse" brief) by way of objections to this Report and Recommendation.

Ohio Rev. Code § 2905.01(A)(2) with firearm specifications (Counts 1 and 2); four counts of

aggravated robbery in violation of Ohio Rev. Code § 2911.01(A)(1) with firearm specifications

(Counts 3, 5, 7, 9); and four counts of robbery in violation of Ohio Rev. Code § 2911.02(A)(2)

(Counts 4, 6, 8, 10).  (*Id.*).  Petitioner was also individually charged with having weapons while

under disability in violation of Ohio Rev. Code § 2923.13(A)(2) with firearm specifications

(Count 11).  (*Id.*).  In the remaining counts, co-defendant Sarah Schmidt was charged with

escape in violation of Ohio Rev. Code § 2921.34(A) with firearm specifications (Count 12); co-

defendant Christina Blanton was charged with obstructing justice in violation of Ohio Rev. Code

§ 2921.32(A)(1)(2) with firearm specification (Count 14); and both Schmidt and Blanton were

charged with kidnapping a minor under 13 years of age in violation of Ohio Rev. Code §

2905.01(B)(1)(2) with firearm specifications (Count 13), as well as with receiving stolen

property in violation of Ohio Rev. Code § 2913.51(A) with firearm specification (Count 15).

(*Id.*).

On October 26, 1998, petitioner entered a guilty plea to the kidnapping counts charged

against him (Counts 1 and 2), two of the aggravated robbery counts (Counts 5 and 7), and one of

the firearm specifications attached to those charges.  (Doc. 9, Ex. 3).  In exchange for his guilty

plea, the remaining counts and specifications charged against petitioner were dismissed.  (*See id.*

& Ex. 4).  At the plea hearing, the prosecutor provided the following statement of facts regarding

the circumstances giving rise to the criminal charges:

> [T]his offense occurred in the early morning hours of August 4, 1998, within
> Hamilton County, Ohio, at the Fifth Third Bank location, which is in the 1200
> block of Harrison Avenue. . . .

On that date, time, and location, this defendant, along with the other co-defendants named in the indictment, other than Christina Blanton, went to that bank for the purpose of robbing them and they – as you will recall from the prior statements I made with the prior defendants, there had been a plan to rob the bank that had been ongoing for approximately a month.

One of the defendants – at least one of the defendants, Clifford Jones, had gone to the bank on a number of occasions prior to the date they robbed it and scoped it out. He was aware of when the employees came to work, how they got into the bank.

On the date in question, these defendants went there in an automobile that was operated by Sarah Schmidt. They were armed with sawed-off shotguns, although Trenton Pope – I do not believe the evidence would show he actually had a sawed-off shotgun on his person. The other three males were armed with sawed-off shotguns.

His role in this robbery was to be the lookout. Clifford Jones and Timothy Pope, his brother, went inside of the bank. They held two bank employees at gunpoint and demanded cash. He was stationed at the front door.

Mr. Trenton Pope was the lookout holding the door open for them – or at the door they entered, I should say, and at some point, they, the inside robbers, began to come out of the bank with money. A duffel bag containing currency that was taken was handed to this defendant along with one of the weapons. He put those items in the car that was operated by Ms. Schmidt.

As you will recall from the prior statements I made, during the course of the robberies some people that were working in other locations near the bank had noticed what was going on. The police had been called in.

This defendant ultimately got – drove away with Ms. Schmidt in her automobile. The car they were in was stopped a short time later by Sergeant Bell from District Five, I believe.

Sergeant Bell approached the car on Ms. Schmidt's side. He noticed a sawed-off shotgun in the car. There was a one-and-a-half-year-old child in the back seat in a car seat. Mr. Pope was seated in the front passenger's seat.

At some point the police officer pulled Ms. Schmidt out of the car. He was in the process of arresting her, putting handcuffs on her. Mr. Pope got out and began to run. Officer Bell . . . gave chase to him. He lost him, but this defendant was

3

located a short time later.  Officer Bell had given a complete description of him, and he was located a short time later and was arrested.

Initially, he tried to minimize his involvement in this offense.  He initially told the police that he knew about the robbery but wasn't involved and he went there because he knew it was going to go on and he was just going to watch and see what happened.  But then he ultimately confessed that he was involved and that he knew what was going on and he was acting in a lookout capacity.

(*Id.*, October 26, 1998 Hearing Tr. 7-10).

Neither petitioner nor his trial counsel disputed the prosecutor's account pertaining to petitioner's involvement in the bank robbery, except that defense counsel did point out that petitioner had made a statement that he was only "minimally involved" in the scheme.  (*See id.*, Tr. 10-11).  Specifically, counsel stated that although petitioner's brother had previously told petitioner "about th[e] plan," petitioner "didn't really think it was going to happen" and only went to co-defendant Eric Chaffer's house "for the purpose of getting a tattoo."  (*Id.*).  However, defense counsel also went on to state that petitioner "does recognize his involvement at the time that this happened."  (*Id.*, Tr. 11).

On November 23, 1998, the trial court entered felony sentencing findings and issued a judgment entry sentencing petitioner to an aggregate prison term of thirty-one (31) years.  (Doc. 9, Exs. 5-6).  Specifically, petitioner was sentenced to concurrent prison terms of eight (8) years for the kidnapping offenses; consecutive prison terms of ten (10) years for each aggravated robbery offense, to be served consecutively to the concurrent terms of imprisonment imposed for the kidnapping offenses; and concurrent prison terms of three (3) years for the firearm specification attached to each count, which was to be served consecutively to the sentences imposed for the underlying offenses.  (*Id.*, Ex. 6).

4

With the assistance of new counsel for appeal purposes, petitioner filed a timely appeal to the Ohio Court of Appeals, First Appellate District.  (Doc. 9, Ex. 7).  In the appellate brief filed by counsel on petitioner's behalf, petitioner raised the following assignments of error:

> 1.  The trial court erred to the prejudice of Defendant-Appellant by imposing the maximum sentence on each count and ordering three of the four sentences to run consecutively.
>
> 2.  The trial court erred to the prejudice of Defendant-Appellant by convicting Defendant-Appellant of two offenses that were allegedly committed with the same animus.

(*Id.*, Ex. 8).

On October 13, 1999, the Ohio Court of Appeals issued a Judgment Entry overruling petitioner's assignments of error and affirming the trial court's judgment.  (*Id.*, Ex. 10).  Petitioner did not pursue a further appeal to the Ohio Supreme Court.  (*See id.*, Ex. 41).

### 2002-2003:  Application For Delayed Reopening Of Appeal

Nearly three years later, on September 12, 2002, petitioner filed a *pro se* application for delayed reopening of his appeal with the Ohio Court of Appeals, First Appellate District.  (Doc. 9, Ex. 11).  In the application filed pursuant to Ohio R. App. P. 26(B), petitioner alleged that his appellate counsel provided ineffective assistance because "he refused to raise issues on appeal that were critical in the sentencing phase" and failed to argue on appeal that petitioner's trial counsel was ineffective for not objecting to a "deficient indictment" or to the prosecutor's misconduct in "present[ing] to the court false evidence of multiple crimes, [w]hen in fact the issue of double jeopardy was present."  (*Id.*, p. 2).  Petitioner also claimed that Ohio R. App. P. 26 "is unconstitutional as applied in Ohio, because it deprives indigent incarcerated, uncounseled inmates due process and equal protection of the law where injustice is the result."  (*Id.*, p. 3).

On March 11, 2003, the Ohio Court of Appeals denied petitioner's reopening application on the ground that the application was untimely, and petitioner had failed to demonstrate good cause for the filing delay.  (*Id.*, Ex. 13).  Petitioner did not pursue an appeal from that ruling to the Ohio Supreme Court.  (*See id.*, Ex. 41).

### 2005-2007:  State Post-Conviction Proceedings

On June 5, 2005, over two years after the reopening proceedings concluded, petitioner filed a *pro se* petition for post-conviction relief with the trial court, claiming that the trial court erred when it sentenced him to non-minimum sentences based on facts "not found by the jury or admitted to by petitioner pursuant to *Blakely v. Washington*[, 542 U.S. 296 (2006),] and *United States v. Booker*[, 543 U.S. 220 (2005)]."  (Doc. 9, Ex. 14).  On July 15, 2005, the trial court denied petitioner's post-conviction petition on the ground that *Blakely* "is not retroactive."  (*Id.*, Ex. 18).

Petitioner was permitted to appeal the trial court's ruling to the Ohio Court of Appeals, First Appellate District.  (*See id.*, Exs. 19, 21).  In an amended appellate brief, petitioner presented the following assignments of error:[2]

> 1.  Appellant . . . was denied his Sixth Amendment right to due process, and his Fourteenth Amendment right to equal protection of the law, where the trial court abused its discretion by sentencing Appellant to maximum and consecutive sentences based upon unsupported facts found by the sentencing court.
>
> 2.  The trial court erred to the substantial prejudice of Appellant . . ., by overruling and denying his petition to vacate or set aside judgment of conviction or sentence, by sentencing Appellant to non-minimum sentences.

---

[2] As respondent noted in the return of writ, the Ohio Court of Appeals ordered that petitioner's initial appellate brief be stricken because petitioner failed to append the judgment being appealed to the pleading.  (*See* Doc. 9, Brief, p. 5 n.3 & Exs. 22-23).

> 3.  Appellant . . . was denied his Sixth Amendment right to the effective assistance of counsel, where trial counsel failed to adequately prepare a defense [o]n behalf of appellant, nor properly advised appellant so that his plea could be intelligent, knowing, and voluntary.

(*Id.*, Ex. 24).

On November 29, 2006, the Ohio Court of Appeals overruled the assignments of error and affirmed the trial court's judgment on the ground that the post-conviction petition was untimely.  (*Id.*, Ex. 26).  The court also found that petitioner's first and third assignments of error were barred from review on the merits because petitioner had not presented them to the trial court.  (*See id.*).

Petitioner pursued a further appeal to the Ohio Supreme Court.  (*See id.*, Exs. 27-28).  He alleged as propositions of law that (1) the trial court abused its discretion by sentencing him "beyond the statutory maximum based upon unsupported facts not determined by a jury beyond a reasonable doubt;" and (2) his trial counsel was ineffective by failing "to adequately prepare a defense" and failing "to properly advise Appellant . . . regarding those factors that must be proven to a jury beyond a reasonable doubt."  (*Id.*, Ex. 28).  On May 2, 2007, the Ohio Supreme Court declined jurisdiction to hear the case and summarily dismissed the appeal "as not involving any substantial constitutional question."  (*Id.*, Exs. 29, 43).

### 2009-2010:  Resentencing – State Trial And Appeal Proceedings

On September 14, 2009, petitioner filed a *pro se* motion "to void judgment" with the trial court.  (Doc. 9, Ex. 30).  In that motion, petitioner contended that his sentence was void because

(1) he was improperly sentenced for "allied offenses of similar import[] committed with a single animus;" and (2) "Post Release Control [was] not properly included in [his] sentence." (*Id.*).

The trial court responded to the motion by holding a resentencing hearing on October 26, 2009. (*See id.*, October 26, 2009 Hearing Tr.). At the hearing, petitioner, who was represented by new counsel, argued that he was improperly convicted and sentenced for the allied offenses of kidnapping and aggravated robbery based on a state supreme court precedent. (*Id.*, Tr. 3). The court rejected that contention, reasoning that the state supreme court case was factually distinguishable because in this case, the petitioner "not only robbed the place, but [also] forced a lady on the ground and a shotgun was held to her head." (*Id.*). However, the court explained that because the law had changed regarding post-release control since the time petitioner was initially sentenced, the court was required to inform the petitioner at sentencing that he was subject to a five-year term of post-release control supervision upon his release from prison. (*Id.*, Tr. 6).

At the hearing, the court advised petitioner about post-release control and then resentenced him to the same terms of imprisonment that had previously been imposed. (*See id.*, Tr. 3-6). The court's resentencing entry, which included a provision on post-release control, was filed on October 30, 2009. (*Id.*, Ex. 31).

Petitioner filed a timely *pro se* notice of appeal to the Ohio Court of Appeals, First Appellate District. (*Id.*, Ex. 32). With the assistance of new counsel for appeal purposes, petitioner filed an appellate brief, in which he raised the following assignments of error:

> 1. The trial court erred by sentencing Appellant without considering the sentencing factors set forth in R.C. §2929.11 and R.C. §2929.12.

2.   The trial court erred by imposing maximum, consecutive sentences upon Appellant.

3.   The trial court erred by imposing punishment upon Appellant that is inconsistent with the sentences imposed for similar crimes by similar offenders.

4.   The trial court erred by imposing multiple punishments for allied offenses of similar import.

5.   Appellant was denied effective assistance of counsel [at the resentencing hearing].

(*Id.*, Ex. 33).

In the appellate brief, counsel also provided an account of the bank robbery, which differed from the account relayed to the trial court at petitioner's plea hearing.  The Ohio Court of Appeals, First Appellate District, made the findings that were quoted in petitioner's appellate brief based on evidence presented during the trial proceedings held in co-defendant Eric Chaffer's case.  According to that account, petitioner did not serve as a "lookout" during the armed robbery, as was reported to the trial court, and instead was the individual who entered the bank with Clifford Jones and assisted in committing the robbery inside the bank.  (*See id.*, pp. 2-3).  Specifically, the following findings from the appellate court's decision in *Chaffer* were quoted in petitioner's appellate brief:

. . . .As bank employees Kevin Murray and Tracy Insprucker arrived to open the bank, two co-defendants, Clifford Jones and Trenton Pope, entered the bank. Jones pointed a shotgun at Murray and Insprucker and ordered them to get down on the ground.  Murray was forced at gunpoint to collect all the cash that was in the bank.  Then Murray was ordered to get on the ground next to Insprucker.

Meanwhile, Chaffer stood outside the bank, acting as a lookout, while co-defendants Timothy Pope and Sarah Schmidt sat in the getaway car, with a one-and-one-half-year-old child in the back seat.  At one point, Chaffer got the keys to Insprucker's sport utility vehicle, entered her vehicle and waited, with the engine running, outside the back door of the bank.  When Jones and Trenton Pope ran out

9

of the bank with $76,000 and a shotgun, Chaffer and his co-defendants fled from the area in both the Schmidt and Insprucker vehicles.

(*Id.*) (quoting *State v. Chaffer,* No. C-980952, 1999 WL 518553, at *1 (Ohio Ct. App. July 23, 1999)).

On June 30, 2010, the Ohio Court of Appeals issued a Judgment Entry overruling petitioner's assignments of error and affirming the trial court's judgment.  (*Id.*, Ex. 35).  In rejecting the claim that petitioner had been improperly sentenced for the allied offenses of kidnapping and aggravated robbery, the court made findings of fact, which are presumed correct,[3] and reasoned in pertinent part as follows:

> The commission of a robbery necessarily entails the restraint of the victim's liberty for a sufficient amount of time to complete the robbery.  But where the restraint is prolonged, the confinement is secretive, or the movement is so substantial as to demonstrate a significance apart from the other offense, there exists a separate animus to support convictions for both offenses.
>
> The facts of this case reflect a separate animus for kidnapping.  Pope and Jones had already taken the cash when they ordered the bank employees to lie prone on the floor of the vault.  They prolonged the restraint when they ordered the employees to remain in the vault after they had left.  Under these circumstances, the restraint of the victims was sufficient to have demonstrated a significance apart from the robberies. . . .

(*Id.*, p. 3) (footnote citations to Ohio cases omitted).  The court also addressed the merits of petitioner's ineffective assistance of trial counsel claim as follows:

> To establish ineffective assistance of counsel, the defendant must demonstrate that counsel's performance fell below an objective standard of reasonable performance and that prejudice arose from counsel's performance.

---

[3] 28 U.S.C. § 2254(e)(1) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct" unless petitioner rebuts the presumption by "clear and convincing evidence." Because petitioner has not presented clear and convincing evidence to rebut the Ohio Court of Appeals' factual findings, those findings are presumed to be correct.  *See McAdoo v. Elo,* 365 F.3d 487, 493-94 (6th Cir. 2004).

10

Pope first argues that his attorney was ineffective in failing to argue in mitigation of sentence.  This argument is without merit.  Pope's original trial counsel offered mitigation at the first sentencing hearing in 1998, and the same trial court presided over the resentencing.  The court demonstrated that it was familiar with the prior proceedings, and Pope has failed to suggest any further mitigating circumstances that counsel might have offered.

He also argues that counsel was deficient in failing to argue that aggravated robbery and kidnapping were allied offenses of similar import.  This argument is also without merit.  As we have already held, the trial court did not err in imposing sentences for both offenses, and any failure on the part of counsel to raise the issue was therefore inconsequential.

(*Id.*, p. 4) (footnote citation omitted).

Petitioner filed a timely *pro se* appeal to the Ohio Supreme Court.  (*See id.*, Ex. 36).  In his memorandum in support of jurisdiction, petitioner presented two propositions of law.  He claimed that (1) his multiple convictions and consecutive sentences for the allied offenses of aggravated robbery and kidnapping violated his due process rights and the Fifth Amendment's Double Jeopardy Clause; and (2) his trial counsel provided ineffective assistance by failing "to adequately prepare a defense."  (*Id.*, Ex. 37).  Petitioner cited as examples of his counsel's ineffectiveness that counsel failed to object to "the duplicity of the charges that subvert the protection against Double Jeopardy" and failed to present arguments in mitigation of petitioner's sentence at the resentencing hearing.  (*Id.*, pp. 7-8).

On October 27, 2010, the Ohio Supreme Court denied petitioner leave to appeal and summarily dismissed the appeal "as not involving any substantial constitutional question."  (*Id.*, Ex. 39).

**Federal Habeas Corpus**

The instant habeas corpus action commenced in December 2011.  In the petition,

petitioner alleges the following grounds for relief:

> **Ground One:**  The trial court erred to the prejudice of Appellant's rights to due process under the Eighth and Fourteenth Amendment[s], in entering judg[]ment of conviction on the aggravated robbery and kidnapping counts, as those offenses are allied offenses of similar import, and by sentencing Appellant consecutively on allied offenses, the court violated his Fifth Amendment right to protection against double jeopardy.

> **Ground Two:**  Appellant Pope was denied his Sixth Amendment right to the effective assistance of counsel in violation of . . . due process and equal protection of the law, as guaranteed by the United States and Ohio Constitution[s], where trial counsel failed to adequately prepare a defense on behalf of Appellant.

(Doc. 2, pp. 5-6(b)).  Respondent has filed a return of writ addressing the merits of petitioner's

claims.  (Doc. 9).

## II.  OPINION

Petitioner's two grounds for federal habeas relief were raised by petitioner on appeal

from the trial court's October 2009 resentencing decision and were addressed on the merits by

the Ohio Court of Appeals.  (*See* Doc. 9, Exs. 33, 35).  Therefore, the standard of review to be

applied in this case is set forth in 28 U.S.C. § 2254(d).  Under that provision, a writ of habeas

corpus may not issue with respect to any claim adjudicated on the merits by the state courts

unless the adjudication either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Otte v. Houk,* 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor,* 529 U.S. 362, 412-13 (2000)), *cert. denied*, 132 S.Ct. 1743 (2012). "A state court's adjudication only results in an 'unreasonable application' of clearly established federal law when 'the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Id.* at 599-600 (quoting *Williams,* 529 U.S. at 413).

The statutory standard, established when the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) was enacted, is a difficult one for habeas petitioners to meet. *Id.* at 600. As the Sixth Circuit recently explained in *Otte*:

> Indeed, the Supreme Court has been increasingly vigorous in enforcing AEDPA's standards. *See, e.g., Cullen v. Pinholster,* __ U.S. __, 131 S.Ct. 1388, 1398, 179 L.Ed.2d 557 (2011) (holding that AEDPA limits a federal habeas court to the record before the state court where a claim has been adjudicated on the merits by the state court). It is not enough for us to determine that the state court's determination is *incorrect*; to grant the writ under this clause, we must hold that the state court's determination is *unreasonable*. . . . This is a "substantially higher threshold.". . . To warrant AEDPA deference, a state court's "decision on the merits" does not have to give any explanation for its results, *Harrington v. Richter,* __ U.S. __, 131 S.Ct. 770, 784, 178 L.Ed.2d 624 (2011), nor does it need to cite the relevant Supreme Court cases, as long as "neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer,* 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) (per curiam).

*Id.* (emphasis in original).

Although the standard is difficult to meet, § 2254(d) "stops short of imposing a complete

bar on federal court relitigation of claims already rejected in state proceedings" and "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington*, 131 S.Ct. at 786.  In other words, to obtain federal habeas relief under that provision, the state prisoner must show that the state court ruling on the claim presented "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87.

The Supreme Court has made it clear that in assessing the merits of a constitutional claim under § 2254(d), the federal habeas court must apply the Supreme Court precedents that controlled at the time of the last state-court adjudication on the merits, as opposed to when the conviction became "final." *Greene v. Fisher*, __ U.S. __, 132 S.Ct. 38, 44-45 (2011); *cf. Otte*, 654 F.3d at 600 (citing *Lockyer v. Andrade,* 538 U.S. 63, 71-72 (2003)) (in evaluating the merits of a claim addressed by the state courts, the federal habeas court must "look to Supreme Court cases already decided at the time the state court made its decision").  In *Greene*, 132 U.S. at 44, the Court explained:

> [W]e held last term in *Cullen v. Pinholster*, 563 U.S. __, 131 S.Ct. 1388, 179 L.Ed.2d 557 (2011), that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the prisoner's claim on the merits.  We said that the provision's "backward-looking language requires an examination of the state-court decision at the time it was made." *Id.*, at __, 131 S.Ct. at 1398.  The reasoning of *Cullen* determines the result here.  As we explained, § 2254(d)(1) requires federal courts to "focu[s] on what a state court knew and did," and to measure state-court decisions *as of 'the time the state court renders its decision.'" *Id.*, at __, 131 S.Ct. at 1399 (quoting *Lockyer v. Andrade,* 538 U.S. [at] 71-72 . . .; emphasis added).

> Decisions by lower courts are relevant "to the extent [they] already reviewed and

interpreted the relevant Supreme Court case law to determine whether a legal principle or right had been clearly established by the Supreme Court."  *Otte*, 654 F.3d at 600 (quoting *Landrum v. Mitchell*, 625 F.3d 905, 914 (6th Cir. 2010), *cert. denied,* 132 S.Ct. 127 (2011)).  The writ may issue only if the application of clearly-established federal law is objectively unreasonable "in light of the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state court decision."  *McGhee v. Yukins,* 229 F.3d 506, 510 (6th Cir. 2000) (citing *Williams,* 529 U.S. at 412).

The Court turns now to address each of petitioner's claims for relief in accordance with the standard of review enunciated in 28 U.S.C. § 2244(d), as interpreted by the Supreme Court.

### A.  Petitioner Has Not Demonstrated He Is Entitled To Relief Based On His Claim In Ground One That He Was Multiply Punished For The Same Offense When He Was Convicted And Sentenced For Both Aggravated Robbery And Kidnapping

In Ground One of the petition, petitioner essentially claims that he was multiply punished for the same offense in violation of the Fifth Amendment's Double Jeopardy Clause when the trial court did not merge his kidnapping and aggravated robbery convictions for sentencing purposes in accordance with Ohio's multiple-count statute, Ohio Rev. Code § 2941.25.  (Doc. 2, pp. 5-5(b)).  Initially, petitioner failed to exhaust the issue after raising it on direct appeal in 1998-1999, because he did not pursue a further appeal at that time to the Ohio Supreme Court.  (*See* Doc. 9, Exs. 8, 10, 41).  However, the ground for relief is now subject to review on the merits because petitioner did exhaust his state court remedies in 2009-2010 by reasserting the claim of constitutional error in the resentencing proceedings and on appeal from the trial court's resentencing decision to both the Ohio Court of Appeals and Ohio Supreme Court.  (*See id.*, Exs. 30, 32, 37 & October 26, 2009 Hearing Tr. 3).

15

The constitutional issue that petitioner has raised involves the Fifth Amendment's Double Jeopardy Clause, which was made applicable to the states through the Fourteenth Amendment, *Benton v. Maryland,* 395 U.S. 784, 794 (1969), and among other things, protects against "multiple punishments for the same offense" imposed in a single proceeding.  *Missouri v. Hunter,* 459 U.S. 359, 366 (1983) (quoting *North Carolina v. Pearce,* 395 U.S. 711, 717 (1969)).

In the "multiple punishment" context, the protection is limited to ensuring that "sentencing courts do not exceed, by the device of multiple punishments, the limits prescribed by the legislative branch of government, in which lies the substantive power to define crimes and prescribe punishments."  *Jones v. Thomas,* 491 U.S. 376, 381 (1989); *see also Ohio v. Johnson,* 467 U.S. 493, 499 (1984); *Brown v. Ohio,* 432 U.S. 161, 165 (1977).  Therefore, "the question under the Double Jeopardy Clause whether punishments are 'multiple' is essentially one of legislative intent."  *Johnson,* 467 U.S. at 499; *see also Palmer v. Haviland,* 273 F. App'x 480, 484 (6th Cir. 2008) (unlike other double jeopardy protections prohibiting re-prosecution for the same offense, "the multiple punishments category of double jeopardy is primarily one of legislative intent").

In the federal courts, the test established in *Blockburger v. United States,* 284 U.S. 299, 304 (1932), is normally used to determine whether two offenses are sufficiently different to allow the imposition of cumulative punishment.  *Johnson,* 467 U.S. at 499 n.8; *see also Brown,* 432 U.S. at 166.  However, the *Blockburger* test, a rule of statutory construction for federal statutes, does not necessarily control the inquiry into the intent of a state legislature.  *Johnson,* 467 U.S. at 499 n.8; *Banner v. Davis,* 886 F.2d 777, 780-82 (6th Cir. 1989).

16

Instead, when assessing the intent of a state legislature, the federal courts must defer to and are bound by the state courts' construction of their own statutes.  *Hunter,* 459 U.S. at 368 (citing *O'Brien v. Skinner,* 414 U.S. 524, 531 (1974)); *see also Johnson,* 467 U.S. at 499; *Brown,* 432 U.S. at 167; *Banner,* 886 F.2d at 780; *Palmer,* 273 F. App'x at 486 (on federal habeas review, "[w]e cannot independently apply typical rules of statutory construction, including the *Blockburger* test, to a state statute and conclude that the state courts were wrong in their reading of legislative intent").  A state legislature may create substantive crimes and punishments that overlap to some degree without violating the Double Jeopardy Clause.  Therefore, "[e]ven if the crimes are the same under *Blockburger,* if it is evident that a state legislature intended to authorize cumulative punishments [for them, the federal] court's inquiry is at an end."  *Johnson,* 467 U.S. at 499 n.8.

In Ohio, the legislature's intent in the multiple punishment area may be discerned from Ohio Rev. Code § 2941.25, which was enacted "to prevent 'shotgun' convictions" or, in other words, "multiple findings of guilt and corresponding punishments . . . for closely related offenses arising from the same occurrence."  *See State v. Johnson*, 942 N.E.2d 1061, 1064-65 & n.2, 1069 (Ohio 2010) (citing *State v. Botta*, 271 N.E.2d 776 (Ohio 1971), and *State v. Logan*, 397 N.E.2d 1345 (Ohio 1979), and quoting Legislative Service Commission comments to § 2941.25); *see also State v. Brown*, 895 N.E.2d 149, 153 (Ohio 2008) (pointing out that the standards set forth in Ohio's multiple-count statute "answered both the constitutional and state statutory inquiries regarding the General Assembly's intent to permit cumulative punishments for the same conduct").  The statute provides:

17

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

Ohio Rev. Code § 2941.25.

The statutory provision permits the trial court to convict and impose cumulative sentences for two or more offenses arising from the same incident only if the offenses (1) are of dissimilar import; or (2) are of similar import, but were committed separately or with separate animus. *Brown*, 895 N.E.2d at 153. The applicable test for deciding the issue potentially involves a two-step inquiry. *See id.* at 153-54 (and Ohio Supreme Court cases cited therein); *see also Johnson*, 942 N.E.2d at 1065-66, 1070; *State v. Harris*, 911 N.E.2d 882, 884 (Ohio 2009) (citing *State v. Blankenship,* 526 N.E.2d 816 (Ohio 1988)). Under the first step of the inquiry, the court must determine whether the various offenses are of similar or dissimilar import; if the offenses are found to be of dissimilar import, the multiple convictions and punishments are permitted and the court's inquiry ends. *See State v. Rance*, 710 N.E.2d 699, 703 (Ohio 1999), *overruled on other grounds by State v. Johnson,* 942 N.E.2d 1061 (Ohio 2010). On the other hand, if the multiple offenses are found to be of similar import, the second level of inquiry is triggered requiring the court to determine whether or not the defendant may be cumulatively punished for the offenses because they were committed separately or with a separate animus. *See, e.g., Johnson,* 942 N.E.2d at 1065-66; *Harris,* 911 N.E.2d at 884; *State v. Cabrales,* 886 N.E.2d 181, 184-85 (Ohio 2008); *Blankenship*, 526 N.E.2d at 817.

The test to apply in resolving whether offenses are of similar or dissimilar import under the first step of the state statutory inquiry has evolved over time.  In June 1999, during the pendency of petitioner's initial direct appeal, the Ohio Supreme Court issued its decision in *Rance*, holding that the first inquiry required courts to compare the statutory elements of the various crimes "in the abstract," without regard to the particular facts of the case, in determining whether the offenses were of similar or dissimilar import.  *Rance,* 710 N.E.2d at 703; *see also Johnson,* 942 N.E.2d at 1066; *Brown,* 895 N.E.2d at 154; *Cabrales,* 886 N.E.2d at 184.  Under the *Rance* "abstract elements-comparison test," multiple offenses were deemed to be dissimilar if they failed to "correspond to such a degree that the commission of one crime will result in the commission of the other."  *Rance,* 710 N.E.2d at 703 (internal citations and quotations omitted).

In the ensuing years, the *Rance* standard proved to be unworkable, producing "inconsistent, unreasonable, and, at times, absurd results."  *Cabrales*, 886 N.E.2d at 186; *see also Johnson*, 942 N.E.2d at 1066-67.  Therefore, in subsequent cases decided prior to the Ohio Supreme Court's entry on October 27, 2010, disposing of petitioner's final state-court appeal in the 2009-2010 resentencing matter, the Ohio Supreme Court modified and created exceptions to the *Rance* standard, without directly overruling *Rance*, "in order to avoid its attendant absurd results."  *See Johnson,* 942 N.E.2d at 1066-69 (discussing post-*Rance* decisions by the Ohio Supreme Court).[4]

---

[4]In *Johnson*, 942 N.E.2d at 1069, the Ohio Supreme Court overruled *Rance* "to the extent it calls for a comparison of statutory elements solely in the abstract."  Now, "[w]hen determining whether two offenses are allied offenses of similar import subject to merger under R.C. 2941.25, the conduct of the accused must be considered." *Id.*  Under the new test adopted in *Johnson,* the inquiry turns on "whether it is possible to commit one offense *and* commit the other with the same conduct."  *Id.* at 1070.  "If the offenses correspond to such a degree that the conduct of the defendant constituting commission of one offense constitutes commission of the other, then the offenses are of similar import."  *Id. Johnson*, which was decided in December 2010, after petitioner's appeal in the resentencing

Of particular relevance to the instant case, in April 2008, the Ohio Supreme Court held in

*Cabrales*, 886 N.E.2d at 188, that "in determining whether offenses are allied offenses of similar

import under R.C. 2941.25(A), *Rance* requires courts to compare the elements of offenses in the

abstract, i.e., without considering the evidence in the case, but does not require an exact

alignment of elements."  In so ruling, the court concluded that some intermediate appellate

courts, including the First District Court of Appeals, had misinterpreted the *Rance* test as

requiring a "strict textual comparison" of the elements.  *See id.* at 185-87 (overruling *State v.*

*Palmer,* 772 N.E.2d 726, 728 (Ohio Ct. App. 1 Dist. 2002)).  In rejecting such an interpretation

of *Rance* as "overly narrow," the *Cabrales* court reasoned in pertinent part:

> [N]owhere does *Rance* mandate that the elements of compared offenses must
> exactly align for the offenses to be allied offenses of similar import under R.C.
> 2941.25(A).  To interpret *Rance* as requiring a strict textual comparison would
> mean that only where *all* the elements of the compared offenses coincide *exactly*
> will the offenses be considered allied offenses of similar import under R.C.
> 2941.25(A).  Other than identical offenses, we cannot envision any two offenses
> whose elements align *exactly*.

*Id.* at 186-87 (emphasis in original).

Thereafter, in March 2009, the Ohio Supreme Court issued another decision in *State v.*

*Winn*, 905 N.E.2d 154 (Ohio 2009), which is directly on point to the case-at-hand.  In that case,

the state's highest court held that kidnapping and aggravated robbery are allied offenses of

---

matter had concluded, applies only prospectively.  Therefore, it does not govern the resolution of petitioner's claim.
*Cf. Render v. Warden, S. Ohio Corr. Facility,* __ F. Supp.2d __, No. 1:10cv629, 2012 WL 3627766, at *5, *45 n.10
(S.D. Ohio Aug. 22, 2012) (Spiegel, J.; Bowman, M.J.) (although the district court did not adopt the undersigned's
recommendation to certify a state-law question to the Ohio Supreme Court regarding the retrospective application of
*Cabrales* and instead granted a conditional writ in accordance with the respondent's request, the undersigned noted
in the Report and Recommendation that the Ohio Supreme Court's later *Johnson* case, which overruled *Rance*,
applies "only prospectively").

similar import when "analyzed in the abstract" under *Rance* as clarified by *Cabrales*.  *Id.* at 158.

The court reasoned in pertinent part:

> In essence the elements to be compared in the abstract are the restraint, by force, threat, or deception, of the liberty of another to "facilitate the commission of any felony" (kidnapping, R.C. 2905.01(A)(2)) and having "a deadly weapon on or about the offender's person or under the offender's control and either display[ing] the weapon, brandish[ing] it, indicat[ing] that the offender possesses it, or us[ing] it" in attempting to commit or committing a theft offense (aggravated robbery, R.C. 2911.01(A)(1)).  It is difficult to see how the presence of a weapon that has been shown or used, or whose possession has been made known to the victim during the commission of a theft offense, does not also forcibly restrain the liberty of another.  These two offenses are "so similar that the commission of one offense will necessarily result in the commission of the other."  *Cabrales*, . . . 886 N.E.2d 181, paragraph one of the syllabus.  They meet the test for allied offenses as it was refined by *Cabrales*.

> Holding that kidnapping and aggravated robbery are allied offenses is also in keeping with 30 years of precedent.  *State v. Logan* (1979), 60 Ohio St.2d 126, 130, . . . 397 N.E.2d 1345, has been considered authority for the proposition that kidnapping and robbery are allied offenses of similar import.  *State v. Jenkins* (1984), 15 Ohio St.3d 164, 198, . . . 473 N.E.2d 264, fn. 29 (pre-*Rance* case, citing *Logan* for proposition that "implicit within every robbery (and aggravated robbery) is a kidnapping"); *State v. Fears* (1999), 86 Ohio St.3d 329, 344, 715 N.E.2d 136 (kidnapping specification merges with aggravated-robbery specification unless the offenses were committed with separate animus); *State v. Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, 880 N.E.2d 31, ¶ 204, citing *Jenkins* . . . ("kidnapping is implicit within every aggravated robbery"); *Cabrales*, . . . 886 N.E.2d 181, at ¶ 18, 25.

> In *Logan*, this court concluded:  "It is clear from the plain language of the statute that no movement is required to constitute the offense of kidnapping; restraint of the victim by force, threat, or deception is sufficient.  Thus, implicit within every forcible rape (R.C. 2907.02[A][1]) is a kidnapping.  *The same may be said of robbery* (R.C. 2911.02), and, under certain circumstances, of felonious assault (R.C. 2903.11)." . . .

> Nor are we persuaded by the state's . . . scenarios.  These examples lapse into the strict textual comparison that this court rejected in *Cabrales*.  We would be hard pressed to find that there is no conceivable situation in which one crime can be committed without the other.

*Id.* at 158-59.

In the instant case, the Ohio Court of Appeals first addressed petitioner's claim when it issued its decision affirming petitioner's conviction on direct appeal in October 1999, a few months after *Rance* was decided.  At that time, the court overruled petitioner's assignment of error because, under the "strict textual comparison" test then employed by the First District Court of Appeals, the aggravated robbery and kidnapping offenses, when compared in the abstract, "required proof of an element that the other did not, and therefore, . . . were not allied offenses of similar import" under the first step of the statutory inquiry set forth in Ohio Rev. Code § 2941.25(A).  (*See* Doc. 9, Ex. 10, pp. 3-4).   Given the Ohio Supreme Court's later decisions in *Cabrales* and *Winn*, it appears that the Ohio Court of Appeals' initial ruling was made in error based on a misinterpretation of *Rance*.

However, the Ohio Court of Appeals was able to rectify its error when it revisited the issue, which was again raised by petitioner as an assignment of error on appeal from the trial court's October 9, 2009 resentencing decision.  By that time, the court had the benefit of hindsight based on the Ohio Supreme Court's decisions in both *Cabrales* and *Winn*.  Relying on the state supreme court's 1979 decision in *Logan*, the Ohio Court of Appeals properly concluded in its decision filed June 30, 2010, that the first step of the inquiry was satisfied because "[t]he commission of a robbery necessarily entails the restraint of the victim's liberty for a sufficient amount of time to complete the robbery."  (*See id.*, Ex. 35, p. 3).

The court went on to consider under the second step of the statutory inquiry set forth in Ohio Rev. Code § 2941.25(B), whether petitioner could nevertheless be cumulatively punished for the allied offenses of kidnapping and aggravated robbery because the offenses were

committed separately or with separate animus.  (*See id.*).  The court concluded that cumulative

punishment was permissible because "[t]he facts of this case reflect a separate animus for

kidnapping."  (*Id.*).  Specifically, the court found that "the restraint of the victims was sufficient

to have demonstrated a significance apart from the robberies" to the extent that (1) the victims

were forced "to lie prone on the floor of the vault" *after* the theft of cash from the bank had

occurred; and (2) the bank robbers "prolonged the restraint" by ordering the victims "to remain

in the vault *after* they had left."  (*See id.*) (emphasis added).[5]

The Ohio Court of Appeals' final adjudication of petitioner's claim, as reasserted in the

2009-2010 resentencing proceedings, comports with the Ohio Supreme Court's interpretation

and construction of Ohio Rev. Code § 2941.25.  Because kidnapping and aggravated robbery are

allied offenses of similar import within the meaning of Ohio Rev. Code § 2941.25(A), as

interpreted by the Ohio Supreme Court in *Winn*, the lower courts were required to proceed to the

second step of the inquiry set forth in Ohio Rev. Code § 2941.25(B) and assess whether the two

offenses were committed separately or with a separate animus.  *See, e.g., Johnson,* 942 N.E.2d at

1065-66 (holding that if multiple offenses are determined to be of similar import under Ohio

Rev. Code § 2941.25(A) because they "can be committed by the same conduct," the court must

then "determine whether the offenses were committed by the same conduct, i.e., 'a single act,

committed with a single state of mind'") (quoting *Brown*, 895 N.E.2d at 158 (Lanzinger, J.,

---

[5] It is noted that the trial court rejected petitioner's claim raised at the resentencing hearing based on other related circumstances.  The court relayed its concern that the restraints used in this case carried a significance apart from the underlying armed bank robbery by distinguishing the Ohio Supreme Court's *Winn* decision on the ground that in the instant case, petitioner "not only robbed the place, but . . . forced a lady on the ground" and held a "shotgun . . . to her head."  (Doc. 9, October 26, 2009 Hearing Tr. 3).

concurring in judgment only)); *see also Harris,* 911 N.E.2d at 884; *Cabrales,* 886 N.E.2d at 184-85; *Blankenship*, 526 N.E.2d at 817.

As both the trial court and Ohio Court of Appeals appear to have understood in the instant case, it is well-settled in Ohio that defendants may be convicted and sentenced for both kidnapping and aggravated robbery based on a finding of "separate animus" stemming from exposure of the victims "to a significantly greater risk of harm than was necessary for the accomplishment of the aggravated robbery offense." *See, e.g., State v. Champion*, No. 24782, 2012 WL 2061590, at *2 (Ohio Ct. App. June 8, 2012) (and cases cited therein).  In *Logan*, which involved the allied offenses of rape and kidnapping, the Ohio Supreme Court adopted the following two-prong standard in determining whether "kidnapping and another offense of the same or similar kind are committed with a separate animus as to each pursuant to R.C. 2941.25(B):"

> (a) Where the restraint or movement of the victim is merely incidental to the underlying crime, there exists no separate animus sufficient to sustain separate convictions; however, where the restraint is prolonged, the confinement is secretive, or the movement is substantial so as to demonstrate a significance independent of the other offense, there exists a separate animus as to each offense sufficient to support separate convictions;
>
> (b) Where the asportation or restraint of the victim subjects the victim to a substantial increase in risk of harm separate and apart from that involved in the underlying crime, there exists a separate animus as to each offense sufficient to support separate convictions.

*Logan*, 397 N.E.2d at 1346.  In so holding, the court expressly recognized that the "prolonged restraint [of the victim] in a bank vault to facilitate the commission of a robbery" is an example of a restraint that could constitute the separate offense of kidnapping under the second, "substantial increase in risk of harm" prong of the separate-animus test.  *Id.* at 1352.

Because petitioner entered a guilty plea in this case, the record does not contain detailed information about the restraints that were imposed on the two bank employees during the course of the bank robbery. However, it was reasonable for the Ohio courts to conclude based on the standards adopted by the Ohio Supreme Court in *Logan* that petitioner had a separate animus for the kidnapping offense to the extent that the record reveals that the victims were ordered to lie face down on the floor of the bank vault and to remain there after the robbery occurred. *Cf. id.*; *see also State v. Gilbert,* No. 08 MA 206, 2012 WL 952243, at *9 (Ohio Ct. App. Mar. 20, 2012) ("Any restraint or asportation of a victim may constitute a separate offense of kidnapping if it was not necessary in order to complete the robbery offense."); *State v. Walker,* No. L-07-1156, 2008 WL 4183337, at *3 (Ohio Ct. App. Sept. 12, 2008) (finding separate animus existed for kidnapping that was separate from the underlying aggravated robbery where the victim "was first robbed and then taken to a different room where her feet and hands were tied, significantly delaying her escape").

The record developed in co-defendant Chaffer's case provides even further support for the courts' determination in this case. Specifically, in reviewing an analogous claim that had been raised by Chaffer on appeal, the Ohio Court of Appeals reported that a review of the record, which included the "detailed bill of particulars" and "the state's summary of the facts surrounding the crimes offered at [Chaffer's] plea hearing," demonstrated the following:

> Chaffer and his fellow perpetrators confronted Insprucker and Murray in the bank parking lot. Wielding shotguns, they forced the two to open the bank and to disable the alarm system. The perpetrators ordered Insprucker to get on the floor while Murray was to fill bags with cash from the bank vault. They ordered the two to surrender their car keys to provide getaway vehicles. And they then "removed [the two] to the vault and ordered them to lie face down on the floor. The two were ordered to remain where they were and not to move.

25

*State v. Chaffer,* No. C-0909602, 2010 WL 3722779, at *2 (Ohio Ct. App. Sept. 24, 2010) (per

curiam).  Applying the two-prong test developed in *Logan*, the court ruled in *Chaffer* that the

kidnapping and aggravated robbery offenses were committed with a separate animus; the court

reasoned in pertinent part as follows:

> It is beyond cavil that the bank-robbery scheme was the immediate motive for the
> kidnapping.  Kidnapping the bank employees was merely incidental to the bank
> robbery. . . .  And here the restraint and asportation of the victims were limited.
> Their detention was brief, the movement was slight.
>
> But we hold, under the second prong of our separate-animus analysis, that by their
> actions the perpetrators subjected Insprucker and Murray to a substantial increase
> in the risk of harm apart from that involved in the robbery.  They moved
> Insprucker and Murray, at gunpoint, from the parking lot into the bank building,
> and they forced Insprucker to lie on the floor where passersby could not see her.
> And to aid their escape, they moved the two to the bank vault and ordered them to
> remain there, significantly increasing the risk of harm to the victims.

*Id.* at *3.

Since *Chaffer* was decided, the Ohio Court of Appeals, First Appellate District, reached

the opposite conclusion when confronted with the same issue on direct appeal of convictions

stemming from an armed robbery of a bank in 2010.  In those later cases, the state court did not

challenge or express any concerns about its finding of separate animus for the kidnappings that

occurred in the instant case; instead, the court found that the circumstances, which supported

Chaffer's and petitioner's separate convictions for both kidnapping and aggravated robbery, were

not present in the 2010 bank robbery.  *Cf. State v. Anderson*, 974 N.E.2d 1236, 1243-45 (Ohio

Ct. App. 2012) (no separate animus found where, in contrast to *Chaffer*, both the aggravated

robbery and kidnapping offenses were based on the defendant's "actions in jumping over the

counter and taking the bank's money, while [the co-defendant] brandished a handgun to move

26

[the bank employee kidnapping victim] and others to a common area of the bank" without any "substantial increase in the risk of harm to [the bank employee] separate from that involved in the commission of the aggravated robbery"); *State v. Cooper,* Nos. C-110027 & C-110028, 2012 WL 473132, at *4-6 (Ohio Ct. App. Feb. 15, 2012) (same finding made in disposition of appeal brought by a co-defendant).

As discussed above, this Court must defer to and is bound by the state courts' interpretation and construction of Ohio's multi-count statute.  *See Hunter,* 459 U.S. at 368; *see also Johnson,* 467 U.S. at 499; *Brown,* 432 U.S. at 167; *Banner,* 886 F.2d at 780; *Palmer,* 273 F. App'x at 486.  Indeed, it is well-settled that "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."  *Bradshaw v. Richey,* 546 U.S. 74, 76 (2005) (citing *Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991); *Mullaney v. Wilbur,* 421 U.S. 684, 691(1975)).  Therefore, in the absence of "persuasive data that the highest court of the state would decide otherwise," this Court must accept the Ohio Court of Appeals' state-law determination, stemming from its interpretation and construction of Ohio Rev. Code § 2941.25(B) in accordance with standards established by the Ohio Supreme Court in *Logan*, that a separate animus existed to support petitioner's convictions and sentences for both kidnapping and aggravated robbery based on the circumstances presented in this case.  *See West v. American Tel. & Tel. Co.,* 311 U.S. 223, 236-37 (1940) (and cases cited therein); *see also Hicks v. Feiock,* 485 U.S. 624, 629-30 & n. 3 (1988) (applying *West* standard in federal habeas case); *Hampton v. United States,* 191 F.3d 695, 701 (6th Cir. 1999) (citing *Hicks,* 485 U.S. at 630 n.3).  *Cf. Lawler v. Fireman's Fund Ins. Co.,* 322 F.3d 900, 903 (6th Cir. 2003).

Accordingly, in sum, petitioner has not demonstrated that his convictions and sentences for kidnapping and aggravated robbery exceeded the limits governing the imposition of multiple punishments in Ohio, as prescribed by the state legislature in Ohio Rev. Code § 2941.25.  In the absence of such a showing, this Court's inquiry is at an end.  *See Johnson*, 467 U.S. at 499 n.8. In any event, even assuming that the circumstances of this case present a close question as to whether a separate animus could be found for each offense under applicable state statutory standards, thereby triggering federal constitutional double-jeopardy concerns, petitioner has not shown that the state court's adjudication of the issue "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *See Harrington,* 131 S.Ct. at 786-87.  The undersigned, therefore, concludes that petitioner is not entitled to federal habeas relief based on his claim in Ground One that he was multiply punished for the same offense in violation of the Fifth Amendment's Double Jeopardy Clause.

### B.  Petitioner Is Not Entitled To Relief Based On His Claim Alleged In Ground Two That He Was Denied Effective Assistance By His Trial Counsel

In Ground Two of the petition, petitioner alleges that he was denied the effective assistance of counsel in violation of the Sixth Amendment because his trial attorney "failed to adequately prepare a defense" on his behalf.  (Doc. 2, pp. 6-6(b)).

As an initial matter, respondent contends in the return of writ that although petitioner has couched his ineffective-assistance-of-counsel claim in general terms, review of the claim is limited to the specific issues that petitioner raised on appeal from the trial court's October 30, 2009 resentencing decision.  (*See* Doc. 9, Brief, pp. 18-19).  Respondent's argument has merit.

28

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state defendant with federal constitutional claims must fairly present those claims to the state courts for consideration before raising them in a federal habeas corpus action.  *See* 28 U.S.C. § 2254(b)(1), (c); *Anderson v. Harless,* 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor,* 404 U.S. 270, 275-76 (1971); *Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006) (quoting *Newton v. Million,* 349 F.3d 873, 877 (6th Cir. 2003)) ("[f]ederal courts do not have jurisdiction to consider a claim in a habeas petition that was not 'fairly presented' to the state courts").  A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement.  *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 848 (1999); *Hafley v. Sowders,* 902 F.2d 480, 483 (6th Cir. 1990); *Leroy v. Marshall,* 757 F.2d 94, 97, 99-100 (6th Cir. 1985).  "Fair presentation" also means that the habeas petitioner has presented both the factual and legal underpinnings of his claims to the state courts.  *Fulcher,* 444 F.3d at 798; *McMeans v. Brigano,* 228 F.3d 674, 681 (6th Cir. 2000); *Franklin v. Rose,* 811 F.2d 322, 325 (6th Cir. 1987).

Furthermore, it is well-settled that the federal habeas court may be barred from considering an issue of federal law from a judgment of a state court if the judgment rests on a state-law ground that is both "independent" of the merits of the federal claim and an "adequate" basis for the state court's decision.  *See Harris v. Reed,* 489 U.S. 255, 260-62 (1989).  In those cases where the last state court to render a reasoned opinion explicitly relies on an adequate  and independent state procedural bar to review, the federal habeas court will presume that a later unexplained order did not silently disregard the procedural default and consider the merits of the

29

claim.  *Ylst v. Nunnemaker,* 501 U.S. 797, 803-04 (1991); *cf. Crawford v. Warden, Warren Corr. Inst.,* No. 1:10cv541, 2011 WL 5307408, at *20 (S.D. Ohio Sept. 29, 2011) (Litkovitz, M.J.) (Report & Recommendation) (citing *Ylst*, *Taqwiim v. Johnson,* No. 99-3425, 2000 WL 1234322, at *3 (6th Cir. Aug. 22, 2000), and *Levine v. Torvik*, 986 F.2d 1506, 1507 n.8 (6th Cir. 1993), *overruled in part on other grounds by Thompson v. Keohane*, 516 U.S. 99 (1995), in holding that the "Ohio Supreme Court's later unexplained entry denying petitioner leave to appeal and summarily dismissing the appeal 'as not involving any substantial constitutional question' must be presumed to rely on the same procedural ground" that was relied on by the Ohio Court of Appeals in rejecting the petitioner's claim), *adopted*, 2011 WL 5304157 (S.D. Ohio Nov. 3, 2011) (Barrett, J.); *Bennett v. Warden, Ross Corr. Inst.,* No. 1:07cv889, 2009 WL 88831, at *9 (S.D. Ohio Jan. 12, 2009) (Black, J.) (same).

   If it appears from the record that the petitioner failed to fairly present his constitutional claims through the requisite levels of state appellate review to the state's highest court, or committed some other procedural default that prevented a merit-based review of the federal claims by the state's highest court, the petitioner may have waived his claims for federal habeas corpus relief.  *See O'Sullivan*, 526 U.S. at 847-48; *Harris,* 489 U.S. at 260-62; *McBee v. Grant,* 763 F.2d 811, 813 (6th  Cir. 1985); *see also Weaver v. Foltz,* 888 F.2d 1097, 1099 (6th Cir. 1989).  In such a case, in the absence of an available state-court remedy, federal review of the defaulted claims is precluded unless the petitioner can demonstrate cause for and prejudice from his procedural default or that failure to consider the defaulted claims will result in a "fundamental miscarriage of justice."  *See, e.g., Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Harris,* 489 U.S. at 262; *Murray v. Carrier,* 477 U.S. 478, 485 (1986); *Engle v. Isaac,*

30

456 U.S. 107, 129 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).

In this case, the only ineffective-assistance-of-trial-counsel claims that were fairly presented by petitioner to the state courts for consideration were those that he raised to both the Ohio Court of Appeals and the Ohio Supreme Court on appeal from the trial court's resentencing decision of October 30, 2009.  (*See* Doc. 9, Ex. 33, pp. 10-11; Ex. 37, pp. 7-8).

Petitioner did not raise any claims challenging his counsel's conduct on direct appeal from his conviction and sentence in 1998-1999.  Although he later attempted to raise claims of ineffectiveness by both his trial and appellate counsel in a reopened appeal, petitioner procedurally defaulted those claims because (1) his application for delayed reopening of the appeal, filed in September 2002, nearly three years after the Ohio Court of Appeals issued its direct appeal decision, was denied as untimely by the Ohio Court of Appeals; and (2) petitioner failed to pursue a further appeal to the Ohio Supreme Court in that matter.  (*See id.*, Exs. 11, 13, 41).  Petitioner also raised claims challenging the effectiveness of his attorney in the original 1998 criminal trial on appeal from the trial court's denial of his state post-conviction petition filed in June 2005.  (*See id.*, Exs. 18, 24, 28).  However, the Ohio Court of Appeals relied on adequate and independent state grounds when it concluded that (1) the post-conviction petition was properly denied as untimely; and (2) in any event, the ineffective-assistance-of-counsel claim was barred from review on the merits because petitioner had not presented the claim to the trial court.  (*See id.*, Ex. 26).  The Ohio Supreme Court's later unexplained entry declining jurisdiction to hear the case and summarily dismissing petitioner's appeal "as not involving any substantial constitutional question" is presumed to rely on the same procedural grounds.  (*See id.*, Ex. 29).

31

Petitioner has neither argued nor otherwise shown cause for and prejudice from his procedural defaults in the state reopening and post-conviction proceedings. Petitioner also has not argued or demonstrated that a fundamental miscarriage of justice will occur if the defaulted ineffective-assistance-of-counsel claims challenging the effectiveness of his original trial attorney are not considered herein.[6] Therefore, this Court's review is limited to the issues challenging the effectiveness of petitioner's counsel at the October 2009 resentencing hearing, which were raised by petitioner on appeal from the trial court's resentencing decision.

In the resentencing appeal, petitioner specifically alleged that his attorney at the resentencing hearing was ineffective for (1) failing "to present mitigation on [his] behalf;" and (2) failing "to argue for the merger of the kidnapping counts with the aggravated robbery counts" on the ground that they are allied offenses of similar import under Ohio Rev. Code § 2941.25. (*See id.*, Ex. 33, pp. 10-11; Ex. 37, pp. 7-8). The Ohio Court of Appeals was the only state court to issue a reasoned decision addressing the merits of those claims. In ruling on the claims, the court correctly identified and reasonably applied the clearly-established two-part standard of review enunciated by the Supreme Court in *Strickland v. Washington,* 466 U.S. 668 (1984). (*See id.*, Ex. 35, p. 4 n.9). As the state court recognized (*see id.*, p. 4), to establish a *Strickland* violation, petitioner must demonstrate both (1) his attorney made such serious errors that he was not functioning as the "counsel" guaranteed by the Sixth Amendment; and (2) counsel's deficient performance prejudiced the defense. *See Strickland*, 466 U.S. at 687.

---

[6] To demonstrate a "fundamental miscarriage of justice" sufficient to justify excusing a procedural bar to review, the petitioner must demonstrate that the errors alleged in the defaulted claim "probably resulted in the conviction of one who is actually innocent." *See Murray,* 477 U.S. at 495-96; *see also House v. Bell,* 547 U.S. 518, 536-37 (2006); *Schlup v. Delo,* 513 U.S. 298, 327 (1995). No such showing has been made in this case.

32

Under the first prong of the *Strickland* test, it must be shown that counsel's representation fell below an objective standard of reasonableness based on all the circumstances surrounding the case.  *Id.* at 688.  In determining whether or not counsel's performance was deficient, the Court must indulge a strong presumption that the challenged conduct fell within the wide range of reasonable professional assistance.  *Id.* at 689.  To satisfy the second "prejudice" prong of the *Strickland* test, petitioner must demonstrate that a "reasonable probability" exists that, but for his counsel's errors, the result of the resentencing proceeding would have been different.  *See Strickland,* 466 U.S. at 694.  Petitioner has met his burden if he shows that the result of the proceeding would ″reasonably likely have been different absent the errors.″  *Id.* at 695.  The Court need not examine the question of whether counsel's performance was deficient before addressing the question of whether petitioner was prejudiced by counsel's performance.  The Court may dispose of an ineffective assistance of counsel claim by finding that petitioner has made an insufficient showing on either ground.  *Id*. at 697.

Here, the undersigned finds that the state appellate court's adjudication of petitioner's claims neither was contrary to nor involved an unreasonable application of *Strickland* and was based on a reasonable determination of the facts in light of the record evidence.

First, petitioner has not demonstrated that his counsel acted either unreasonably or prejudicially by failing to offer arguments for mitigation of the sentence at the resentencing hearing.  The Ohio Court of Appeals found that petitioner's original trial counsel had "offered mitigation at the first sentencing hearing in 1998," and that the judge who considered that evidence at the first hearing was the same person who presided over petitioner's resentencing.  (*See* Doc. 9, Ex. 35, p. 4).  As the state appellate court reasonably concluded, petitioner has not

33

shown that his counsel at the resentencing hearing was ineffective given that the trial court had already considered mitigation at the first hearing and petitioner had "failed to suggest any further mitigating circumstances that counsel might have offered" on resentencing.  (*See id.*).

Second, petitioner has not demonstrated that his counsel acted either unreasonably or prejudicially by failing to argue at the resentencing hearing that the kidnapping and aggravated robbery counts should be merged as allied offenses under Ohio Rev. Code § 2941.25.  It appears from the record that the argument was in fact raised by petitioner and rejected by the trial court at the resentencing hearing.  (*See id.*, October 26, 2009 Hearing Tr. 3).  Moreover, as discussed above in addressing the underlying allied-offense claim alleged in Ground One of the petition, it was reasonable for the state courts to conclude based on the circumstances presented in this case that, pursuant to Ohio Rev. Code § 2941.25(B), a "separate animus" existed for kidnapping that was sufficient to support petitioner's convictions for both offenses.  Therefore, as the Ohio Court of Appeals reasonably determined in addressing petitioner's corollary ineffective-assistance-of-counsel claim, "any failure on the part of counsel to raise the issue [at the resentencing hearing] was . . . inconsequential."  (*Id.*, Ex. 35, p. 4).  Indeed, given the trial court's ruling on the issue at the resentencing hearing, it is not reasonably likely that the result of the resentencing proceeding would have been different if counsel, instead of petitioner, had presented the argument to the court.

Accordingly, in sum, the undersigned concludes that petitioner procedurally defaulted and has waived any claims of error on the part of his original trial counsel that were raised in his application for delayed reopening of the appeal filed in September 2002 and on appeal from the trial court's denial of his state post-conviction petition filed in June 2005.  Moreover, upon

consideration of the merits of petitioner's non-defaulted claims challenging the effectiveness of petitioner's counsel at the resentencing hearing held in October 2009, it was reasonable for the Ohio Court of Appeals to conclude that petitioner was not denied the effective assistance of counsel at that hearing.  Therefore, petitioner is not entitled to habeas relief based on his claim in Ground Two of petition that he was denied the effective assistance of trial counsel.

## IT IS THEREFORE RECOMMENDED THAT:

1.  Petitioner's petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (Doc. 2) be **DENIED** with prejudice.

2.  A certificate of appealability should not issue with respect to the two grounds for relief alleged in the petition, which were addressed on the merits herein, in the absence of a substantial showing that petitioner has stated a "viable claim of the denial of a constitutional right" or that the issues presented are "adequate to deserve encouragement to proceed further." *See Slack v. McDaniel,* 529 U.S. 473, 475 (2000) (citing *Barefoot v. Estelle,* 463 U.S. 880, 893 & n.4 (1983)); *see also* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

In addition, a certificate of appealability should not issue to the extent petitioner has alleged claims in Ground Two, which this Court has concluded are procedurally barred from review based on petitioner's procedural defaults in the state courts.  Under the first prong of the applicable two-part standard enunciated in *Slack,* 529 U.S. at 484-85, "jurists of reason" would not find it debatable whether this Court is correct in its procedural rulings.[7]

---

[7]Because the first prong of the *Slack* test has not been met, the Court need not address the second prong of *Slack* as to whether "jurists of reason" would find it debatable whether petitioner has stated a viable constitutional claim in any defaulted claim for relief.  *See Slack,* 529 U.S. at 484.

3.  With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and, therefore, **DENY** petitioner leave to appeal *in forma pauperis* upon any showing of financial necessity.  *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).


 *s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

36

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

TRENTON EDWARD POPE,                        Case No. 1:11-cv-866
          Petitioner

          vs                                Dlott, J.
                                            Bowman, M.J.

WARDEN, PICKAWAY
CORRECTIONAL INSTITUTION,
          Respondent

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of

the recommended disposition, a party may serve and file specific written objections to the

proposed findings and recommendations.   This period may be extended further by the Court on

timely motion for an extension.  Such objections shall specify the portions of the Report objected

to and shall be accompanied by a memorandum of law in support of the objections.  If the Report

and Recommendation is based in whole or in part upon matters occurring on the record at an oral

hearing, the objecting party shall promptly arrange for the transcription of the record, or such

portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the

assigned District Judge otherwise directs.  A party may respond to another party's objections

**WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in

accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140

(1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

cbc

37